UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLENN CORNWELL, JR.,<br><br>　　　　　Petitioner,<br><br>　v.<br><br>WARDEN, San Quentin State Prison,<br><br>　　　　　Respondent. | No.  2:06-cv-00705 TLN KJN<br><br>**DEATH PENALTY CASE**<br><br>ORDER RE PETITIONER'S MOTION FOR DISCOVERY (Doc. 136) |

Following this court's prior consideration and decision concerning petitioner's 28 U.S.C. § 2254(d) claims, and specifically concerning petitioner's claims 3 and 34, petitioner moves for discovery concerning "files principally in the possession of the Sacramento County District Attorney and the California Department of Corrections relating to" this matter. (Doc. 136 at 8.)

Following consideration of the motion and related pleadings, the undersigned finds petitioner's request should be granted in part and denied in part.

I.     Relevant Specific Background

On February 15, 2018, the undersigned recommended, in relevant part, that the court find petitioner's claim 3 satisfied the requirements of § 2254(d), and that consideration of claim 34 be deferred until consideration of any procedural default issues. (Doc. 119.) Ultimately, on March 19, 2019, the Findings and Recommendations were adopted in full by the district judge. (Doc. 129.)

1

Thereafter, in a joint status report of September 3, 2019, the parties specifically addressed the issue of discovery concerning claims 3 and 34. (Doc. 131.) Petitioner advised he intended to "seek discovery as to all sub-claims of Claims 3 and Claim 34" and respondent "anticipate[d] seeking an order . . . to obtain trial counsel's defense file." (Id. at 2-3.)[1]

Following the undersigned's order concerning the deadlines applicable to the discovery (Doc. 133), petitioner filed his Motion for Discovery. (Doc. 136.) Respondent opposed the motion (Doc. 139) and petitioner replied (Doc. 140).

II.     Legal Standards

Parties in a habeas proceeding are not entitled to discovery as a matter of course. Bracy v. Gramley, 520 U.S. 899, 904 (1997). Rather, "[a] party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure, if and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." Rule 6, Rules Governing § 2254 Cases. Good cause is shown by the presentation of "specific allegations" demonstrating the need for the discovery. Bracy, 520 U.S. at 908-09 (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)). The Ninth Circuit has held that discovery is proper where essential to resolution of a claim. Pham v. Terhune, 400 F.3d 740, 743 (9th Cir. 2005); Jones v. Wood, 114 F.3d 1002, 1009 (9th Cir. 1997).

"[D]iscovery is available . . . at the discretion of the district court judge for good cause shown, regardless of whether there is to be an evidentiary hearing." Jones v. Wood, 114 F.3d at 1009. "A district court in a habeas proceeding 'need not conduct full evidentiary hearings,' but may instead 'expand the record . . . with discovery and documentary evidence.'" Williams v. Woodford, 384 F.3d 567, 590 (9th Cir. 2004) (quoting Watts v. United States, 841 F.2d 275, 277 (9th Cir. 1988) (per curiam)). "It may . . . be perfectly appropriate, depending upon the nature of the allegations, for the district court to proceed by requiring that the record be expanded to

---

[1] In the joint status report, respondent indicated the "procedural default challenges are limited to Claim 3(e), whether trial counsel unreasonably failed to rebut the prosecutor's argument that because Mr. Cornwell was not insane at the time of the 1983 and 1992 crimes, there was no mitigation[,] and Claim 34, ineffective assistance of state habeas counsel." (Doc. 131 at 2.) And petitioner indicated he would be seeking "an evidentiary hearing on Claim 3" following the "completion of the discovery process…." (Doc. 131 at 3.)

include letters, documentary evidence, and . . . even affidavits." Phillips v. Ornoski, 673 F.3d 1168, 1179 (9th Cir. 2012), as amended on denial of reh'g and reh'g en banc (May 25, 2012) (quoting Raines v. United States, 423 F.2d 526, 529-30 (4th Cir. 1970)).  The scope and extent of the discovery permitted under Rule 6(a) is a matter confined to the discretion of the district court.  See Bracy, 520 U.S. at 909; see also McDowell v. Calderon, 197 F.3d 1253, 1255-56 (9th Cir. 1999) (en banc) (finding the district court's imposition of a protective order limiting the use of discovered materials should be upheld as not an abuse of discretion).

III.    Discussion

*The Parties' Pleadings*

Petitioner's Motion

Petitioner requests the court order respondent to provide information from "files in the possession of the Sacramento County District Attorney's office[2] and the California Department of Corrections" because "[t]here was an extensive investigation in this case by local law enforcement officials, and petitioner is entitled to view this material for purposes of determining the possible presence of any relevant material under *Brady v. Maryland*, 373 U.S. 83 (1986), and in furtherance of his claims of ineffective assistance of counsel."  (Doc. 136 at 9.)  Petitioner claims

> the files of the local prosecutor, the Sacramento County District Attorney, the California Department of Corrections, the probation and parole records of Petitioner, are relevant for the factual development of his claims. These claims of ineffective assistance of counsel include but are not limited to not conducting an adequate pre-trial investigation; not investigating Petitioner's claim of actual innocence of this crime; not gathering mitigating evidence from relevant family members and others; not gathering records of Petitioner's mental state at the time of the crime; and other claims

---

[2] Petitioner states that for purposes of his motion, "the term 'the prosecution and law enforcement authorities' refers to the Sacramento County District Attorney's office and any sub-division thereof," thereafter providing an exhaustive list of local, state and federal law enforcement agencies, and concluding with "and any other law enforcement agency in possession of documents and recordings relating to petitioner Glen Cornwell and/or any other person or entity known to such agencies . . or of any laboratory used by the above listed agencies . . . and/or any expert or laboratory or testing or examination facility used by any of these listed agencies for the testing, examining, or processing of evidence in connection with (or for possible connection with) any aspect of the case against Mr. Cornwell."  (Doc. 136 at 31:1-22.)

3

> that can only be shown by allowing petitioner to view material in the hands of the prosecution, police, and parole offices at the time of the trial.

(Doc. 136 at 29-30.) Petitioner asserts "discovery is necessary to allow Petitioner to prove his claims of ineffective assistance of counsel, by showing what counsel would have obtained by effective litigation of the prosecution's failure to comply with its duty of disclosure under *Kyles v. Whitley*, 514 U.S. 419 (1995)," noting a "failure to adequately investigate the case, including Roland Johnson's background and the length of time he allegedly knew Mr. Cornwell" and that the "prosecution and police files on Mr. Johnson are relevant to these issues." (Doc. 136 at 30.) Further, in noting requests for "the discovery materials" to which he was "entitled at the time of trial," petitioner further requests "complete cooperation agreements, or immunity files, of prosecution witnesses, interviewees, or informants . . . with whom negotiations were begun or to whom promises of immunity from prosecution or other benefits were offered in exchange for testimony or information regarding Petitioner's case" (Doc. 136 at 32-33), and indicating these types of materials were not a part of "trial counsel's files," "though [he] has reason to believe such agreements exist or that negotiations for such agreements may have taken place." (Doc. 136 at 33.) Next, petitioner seeks discovery concerning "records of testing of blood, fluid, or tissue samples taken at arrest or during intake or other processing at Sacramento County Jail for Petitioner or any other witness in this case," as he is informed and believes "arrest and intake processing at Sacramento County Jail often includes the taking and examination of blood, fluid, and tissue samples, testing of samples for the presence of alcohol and other intoxicants," but that the trial file includes no such information. (Doc. 136 at 33-34.) Petitioner also seeks:

> all psychological or psychiatric reports "of any prosecution witness against Mr. Cornwell" as "required by *Brady*;"
>
> any "juror 'book'" or other file, memorandum, or record containing the results of any prosecution or law enforcement investigation of potential or actual jurors or alternates in this case, including rap sheet information;"
>
> any "other records, files, or information in whatever form pertaining to the bias and credibility of any person/witness who was interviewed or questions or who testified on behalf of the government," not limited to the list of twelves specific requests;

information "pertaining to any of the persons employed by the following agencies: the Sacramento County Sheriff's Department; the California Department of Justice; the California Department of Corrections" concerning "an officer's alleged prior use of excessive force, ethnic or racial bias, or record of falsifying or planting evidence, testifying falsely, psychiatric or psychological records," on the basis that trial counsel "could have discovered such information at the time of trial had such motion been made;"

"[c]opies of any and all diaries or diary entries, journal or journal entries, calendars, or similar writings by Petitioner or any other witness for or against Petitioner" as relevant and material "mitigating evidence" to "help to impeach and undermine the credibility of witnesses and declarants against" him as "required by *Brady*;"

all "reports, files, and documents pertaining to this case in the possession of the Sacramento County Coroner's office" or related agency," as the "materials were required to be disclosed prior to trial pursuant as well as under the *Brady* doctrine;"

any "photographs, negatives, written reports, memoranda, or other documents of any kind pertaining to the crime scene photography and/or videography in this case" and related identifying information because it was required to be disclosed but "appears that much of this evidence either was not turned over to the defense, or has been lost or destroyed;"

any "written reports, memoranda, or other materials pertaining to information provided by any employee of the district attorney's office or sheriff's department to any prosecution witness" as it is "impeachment evidence going to credibility and must be disclosed pursuant to the *Brady* doctrine;"

copies of "any and all exhibits, including penalty phase exhibits, in the possession of the prosecution or law enforcement authorities which were admitted or presented as evidence" to "the extent not covered in preceding requests;"

any "polygraph reports, polygraph charges and tapes" and related materials because it "goes to the impeachment and credibility of witnesses and must be disclosed pursuant to the *Brady* doctrine;"

any "jail housing medical, psychological and psychiatric, disciplinary, and other records for the State's witnesses" as the records "constitute important exculpatory and impeachment evidence and were discoverable pursuant to the *Brady* doctrine;"

any "[i]mpeachment evidence pertaining to any witness for or against Petitioner not previously described" including "the qualification of any expert" as such disclosure "is required by *Brady*;" and

any "documentary or other evidence produced through the investigation conducted by the district attorney's office, the sheriff's department, any law enforcement agency, or any other agency of [his] character, background, and mental and physical history," as that

5

1           "material was required to be provided to the defense upon request, and disclosure [] is required."

(Doc. 136 at 34-39.) Finally, petitioner seeks a continuing discovery order. (Doc. 136 at 39.)

      Petitioner argues good cause exists for his prison records because, while a sheriff's deputy testified during the penalty phase that petitioner was a trustee who worked diligently and was well behaved, "the complete prison records will indicate whether [his] entire record could have been presented in a more favorable manner" and are "necessary in order to assess trial counsel's effectiveness or ineffectiveness regarding" their presentation. (Doc. 136 at 40.) Petitioner further asserts prior "prison, local jail and law enforcement records are relevant" to the claim "that trial counsel were ineffective for failing to investigate the background and circumstances of petitioner and the mitigating aspects of his adjustment to prison." (Doc. 136 at 40-41.) Petitioner concludes "good cause justifies issuance of a discovery order to the Sacramento County Sheriff Dept., the California Department of Corrections, and other law enforcement authorities." (Doc. 136 at 41.)

      Next, petitioner contends good cause exists for parole and probation files, and in particular "probation reports, progress on parole, and any investigation notes, interviews, and the like will be highly relevant to petitioner's claims, especially for the ineffective assistance of counsel claims." (Doc. 136 at 41.) The information is also relevant to trial counsels' purported failure "to rebut the prosecutor's argument that [he] was not insane at the time of the 1983 and 1992 offense, and relevant information as to that could be in the probation and parole reports." (Doc. 136 at 41.)

      Finally, asserting the establishment of good cause, petitioner includes "two additional reasons" for the requested discovery:

> First, Mr. Cornwell has raised substantial claims of state misconduct, including well-documented claims that the State made knowing use of false and misleading testimony, and failed to disclose material exculpatory evidence. Materials corroborating these claims are in the exclusive custody of the State. In this posture, the State cannot be heard to oppose discovery merely for fear that disclosure will further reveal the illegality of Mr. Cornwell's conviction and sentence of death.
>
> Second, Mr. Cornwell has had no access to any discovery thus far in the litigation. Prior counsel for Mr. Cornwell did not file for

6

> discovery in state court. As a result, despite due diligence, counsel for Mr. Cornwell has been unable to complete the investigation of facts material to the litigation of his claims. Accordingly, Mr. Cornwell cannot obtain the information requested without the Court's ordering formal Rule 6 discovery. Third, the requested materials are highly relevant to Mr. Cornwell's claim in issue here, Claims 3 and 34.

(Doc. 136 at 42.) Petitioner also claims the court should order discovery in the interest of judicial economy. (Doc. 136 at 42-43.)

### Respondent's Opposition

In opposing the motion, respondent notes "[o]nly one issue remains for factual development – whether trial counsel's penalty phase strategy was unreasonable because counsel failed to investigate and present mitigating evidence of Petitioner's family background and mental health history (Claim 3)." (Doc. 139 at 1.) Respondent maintains petitioner "offers nothing to show what counsel knew about his case . . . [and] has yet to turn over counsel's file." (Doc. 139 at 2.) Respondent contends petitioner has failed to demonstrate good cause for his discovery requests and "apparently is on a 'fishing expedition' to find evidence of his innocence – evidence that supposedly his counsel should have obtained but which the State allegedly withheld." (Doc. 139 at 2.) Respondent opposes the requests as "extremely broad and [] not tailored to proving the only issue that now matters – whether counsel's mitigation strategy at the penalty phase was ineffective in light of what counsel knew about the case." Those requests, respondent contends, "are simply beyond the scope of factual development the Court ordered." (Doc. 139 at 2.)

Respondent argues petitioner's discovery requests "from a wide variety of state and federal agencies" bear no relevance to the issue of counsel's ineffectiveness during the penalty phase. (Doc. 139 at 3.) Respondent contends petitioner "wants to re-litigate and establish his innocence, an issue reserved for the guilt phase of his trial," specifically referring to petitioner's requests for "informant information and toxicology reports" and related assertions the materials he seeks "are necessary to allow him to prove his claim for ineffective assistance, and that disclosure of these materials at this time is required by *Brady v. Maryland*." (Doc. 139 at 3.) Respondent claims petitioner is attempting "to belatedly assert a *Brady* claim by alleging that law

enforcement withheld materials from counsel during trial," but argues those "materials are not relevant to counsel's alleged failure to investigate and to present evidence of [p]etitioner's family background and mental health history." (Doc. 139 at 3.) Further, respondent contends that, given the issue to be determined, "counsel cannot be deemed ineffective based on information unknown to him" where the relevant inquiry is determined by "what counsel knew at the time." (Doc. 139 at 3.) Respondent claims petitioner failed to show that the law enforcement records sought "have any bearing on counsel's knowledge at the time of trial or the reasonableness of counsel's penalty-phase investigation and strategy." (Doc. 139 at 3.)

Respondent further claims petitioner "has not shown that the law enforcement records relating to his family background and mental health history are not equally accessible to him" and that petitioner "has not shown that he does not have, or cannot obtain, any prison or jail records with information about his mental health and social history." (Doc. 139 at 4.)

Respondent argues "there is no discernable connection between the discovery Petitioner seeks and his penalty-phase ineffective assistance claim," that the discovery petitioner seeks "is not reasonably calculated to lead to relevant, admissible evidence or further factual development as to counsel's purported ineffectiveness in investigating and presenting penalty phase mitigation evidence," and thus the motion for discovery should be denied "for lack of good cause and for failure to develop the state court record." (Doc. 139 at 4.)

### Petitioner's Reply

In reply to respondent's opposition, petitioner complains respondent failed to oppose his motion with any specificity and that his "general and specific showings of good cause are largely ignored by" respondent. (Doc. 140 at 2.) Petitioner contends that where the court has already found a prima facie case made as to claims 3 and 34, Rule 6 permits "the use of discovery to *establish*" a prima facie case for relief. (Doc. 140 at 2, italics in original.) Petitioner denies respondent's assertion that his discovery motion is a "mere 'fishing expedition.'" (Doc. 140 at 3.) Further, arguing respondent has repeatedly mischaracterized the ineffectiveness of assistance claims "as concerning only 'what counsel knew about his case,'" petitioner asserts such claims are "never limited to the question of what defense counsel knew or did not know at the time of

8

trial." (Doc. 140 at 3.) Next, petitioner argues respondent's reliance on <u>Dunn v. Reeves</u>, 141 S. Ct. 2405 (2021), and <u>Burt v. Titlow</u>, 571 U.S. 12 (2013), to support his opposition are calls for application of a categorical rule – an application rejected by the United States Supreme Court for claims such as this one. (Doc. 140 at 4-5.) Petitioner contends the "trial record shows what was actually presented at trial and Petitioner has shown what was not but should have been produced. It was ineffective assistance of counsel for failure to present the evidence [p]etitioner and this Court have identified." (Doc. 140 at 5.) Petitioner concludes he has established good cause for the requested discovery and seeks an order authorizing same. (Doc. 140 at 4-5.)

*Findings*

### Relevant Background

In the Findings and Recommendations regarding claim 3, and the deficiency prong of the ineffective assistance of counsel claim, the undersigned found petitioner had "made a prima facie case showing that counsel acted unreasonably in preparing for the penalty phase and in presenting evidence at the penalty phase. To the extent the California Supreme Court found otherwise, it did so unreasonably." (Doc. 119 at 93.) As for the prejudice prong, the undersigned concluded: "Petitioner need not prove his claim at this point. He only needed to show the California Supreme Court that there was a reasonable likelihood he could succeed on this claim when the evidence was fleshed out. And the state court was required to consider the evidence proffered in the light most favorable to petitioner in making its determination. Under those standards, this court cannot understand how the California Supreme Court could have determined petitioner failed to make a prima facie showing of prejudice. This court finds petitioner has satisfied 28 U.S.C. § 2254(d) for claim 3." (Doc. 119 at 96.)

As to claim 34, the undersigned found petitioner was not entitled to relief concerning his claim of ineffective assistance of state appellate counsel (Doc. 119 at 230-231) and further found "consideration of the allegation . . . that state habeas counsel was ineffective should be deferred until the consideration of any procedural default issues" (Doc. 119 at 231-232).

Notably too, and relevant here, the undersigned found petitioner's claim 1 asserting actual innocence to be without merit, concluding:

> Given these high standards, even if petitioner's freestanding actual innocence claim were cognizable, it is meritless. First, petitioner has not presented any newly discovered evidence establishing his innocence. All the evidence petitioner claims supports his actual innocence was presented at his trial and rejected by the jury. Petitioner simply reasserts his trial defense and reargues that the prosecution's evidence was not credible. Furthermore, although the evidence may cast doubt on petitioner's guilt, petitioner has not persuaded this court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Perkins, 133 S. Ct. at 1928.

(Doc. 119 at 28.) Likewise, the undersigned found petitioner's claim 2, asserting ineffective assistance of counsel at the guilt phase for a failure to investigate and present evidence to impeach Roland Johnson, expose the inadequacy of the police investigation, and present evidence of petitioner's financial wellbeing to be without merit. (Doc. 119 at 28-55.) So too was petitioner's claim his due process rights were violated by admission of evidence of his poor financial condition. (Doc. 119 at 158-62.) The undersigned also found no merit to petitioner's claim that trial counsel was ineffective for failing to allege state misconduct. (Doc. 119 at 218-19.) It was also found that petitioner "failed to make a prima facie showing that he was in fact incompetent to stand trial. . . ." (Doc. 119 at 208.)

In sum, despite the objections offered by both petitioner (Doc. 128) and respondent (Doc. 127), on March 19, 2019, District Judge Troy L. Nunley adopted the Findings and Recommendations in full, to wit: (1) petitioner satisfied 28 U.S.C. § 2254(d) as to claim 3; (2) claim 19 was found to be premature and dismissed it without prejudice to renewal; (3) found claim 27 to be unexhausted and dismissed the claim; (4) found consideration of claim 34 premature and deferred it for later consideration of procedural default issues; and (5) found petitioner had failed to satisfy § 2254(d) "for the remaining claims and subclaims in the amended petition" and denied relief accordingly. (Doc. 129.)

On March 21, 2019, the undersigned issued an order directing the parties to file a joint status report, noting that procedural default determinations remain to be made as asserted in respondent's motion to dismiss (including claims 3 and 34). (Doc. 68.)

In the joint status report, respondent indicated the "procedural default challenges are limited to Claim 3(e), whether trial counsel unreasonably failed to rebut the prosecutor's

argument that because Mr. Cornwell was not insane at the time of the 1983 and 1992 crimes, there was no mitigation[,] and Claim 34, ineffective assistance of state habeas counsel." (Doc. 131 at 2.) And petitioner indicated he would be seeking "discovery as to all sub-claims of Claims 3 and 34." (Doc. 131 at 2.) Petitioner further indicated he would be seeking "an evidentiary hearing on Claim 3" following the "completion of the discovery process …." (Doc. 131 at 3.)

<u>Prosecution and Law Enforcement Files</u>

Petitioner asserts good cause exists to permit discovery "to obtain all the material in the complete prosecution and law enforcement files . . . in the possession of the Sacramento County District Attorney's Office and the Sacramento Police Department and other law enforcement authorities." (Doc. 136 at 30.) He argues the "prosecution and police files on [Roland] Johnson are relevant" to claim 3(a) and trial counsel's "failure to adequately investigate the case, including Roland Johnson's background and the length of time he knew Mr. Cornwell" and that the information sought "would have been relevant to both phases of the trial." He also states the "files are necessary for full development of many of the claims in the writ application." (Doc. 136 at 30.)

Petitioner has not established good cause. His broad request for the entirety of the prosecution and law enforcement files to establish a claim of ineffective assistance of counsel for a failure to adequately investigate and present evidence concerning petitioner's family history and mental health is insufficient. The request is so broad sweeping that, other than its assertions that the requests relate to claim 3, it could be viewed as a discovery request uninhibited by any of this court's prior findings.

The undersigned agrees with respondent that the request appears to be a fishing expedition – a search for information cast with a wide net in the hopes of catching something of value, rather than showing the required specificity. (Doc. 136 at 31-39.) In fact, the requests and the purported bases for those requests appear more related to claims the court has already determined to be without merit. For but two examples, the request seeks discovery materials relevant to a claim of actual innocence and discovery materials pertaining to Roland Johnson, including Johnson's background, length of relationship with petitioner, and his credibility. The undersigned

11

agrees with respondent that it appears petitioner is attempting to resurrect claims previously found by this court to be without merit, and/or by referring to Brady v. Maryland and the prosecution's obligation to produce exculpatory evidence, petitioner is attempting to present a belated misconduct claim.

Habeas was "never meant to be a fishing expedition for habeas petitioners to explore their case in search of its existence." Rich v. Calderon, 187 F.3d 1064, 1067 (9th Cir. 1999) (internal quotation marks omitted). And discovery certainly should not be undertaken here where the materials sought are plainly relevant only to claims already adjudicated, including actual innocence, ineffective assistance of counsel during the guilt phase and for a failure to allege state misconduct, among others.

Petitioner's motion for "all the material in the complete prosecution and law enforcement files relevant to [his] case" in the possession of the Sacramento County District Attorney's Office, the Sacramento Police Department, and "any other law enforcement authorities" as defined in his motion is denied. (Doc. 136 at 30.) Good cause does not exist to permit blanket discovery of the complete prosecution and law enforcement files. Bracy, 520 U.S. at 904, 909.

As for petitioner's more specific requests, outlined at pages 32 through 39 of the motion and identified as items "1.a." through "1.p," those requests are also denied. The requests are not essential to a determination of claims 3 and 34. Pham v. Terhune, 400 F.3d at 743; Jones v. Wood, 114 F.3d at 1009. For example, item 1.i. seeks a virtual plethora of documents, from all manner of agencies, concerning "testing of tissue of fluid samples, clothing, hair, fiber, transfer evidence, of the victim in this case," among other items, and there is no relation between the materials sought and claims 3 and 34. Another example is item 1.j., wherein petitioner seeks all "photographs, negatives, written reports, memoranda, or other documents of any kind pertaining to the crime scene photography and/or videography in this case . . . ." Id. Neither relates to the ineffective assistance of trial counsel during the penalty phase or to the ineffective assistance of state habeas counsel. The same is true of the remaining requests in this category. Nor can the undersigned conceive how psychological or psychiatric reports of prosecution witnesses, "juror" books or investigative materials pertaining to "actual jurors or alternates," nor even polygraph-

related materials relating to witnesses in this matter relate to a claim of ineffective assistance of trial counsel during the penalty phase. The requests are simply not relevant at this stage of the proceedings.

Petitioner's requests for prosecution and law enforcement files are denied.

### Prison Records

Petitioner also seeks "access to records of the Sacramento County Sheriff and the California Department of Corrections . . . relating to his own custody," as relevant to claims 3 and 34. He contends that the information he "was well-behaved while in prison prior to this incident and during his pretrial incarceration at the local jail would have been admissible as evidence in mitigation" during the penalty phase, but was not introduced. (Doc. 136 at 40.) He argues "complete" records from the facilities are "necessary in order to assess trial counsel's effectiveness or ineffectiveness regarding the presentation of these records." (Doc. 136 at 40.) Petitioner notes such records may also be in the custody of "local correctional officials" and thus seeks a "discovery order to the Sacramento County Sheriff Dept., the California Department of Corrections, and other law enforcement authorities." (Doc. 136 at 41.)

In petitioner's motion, counsel noted that Michael Sailors, the primary investigator's employee, served a subpoena duces tecum on the California Department of Corrections. (ECF No. 136 at 22, citing CT 987.9 at 330.) In September 1994, Sailors served a subpoena for petitioner's jail records. (ECF No. 136 at 23, citing CT 987.9 at 489.)

During the penalty phase of his trial, petitioner testified he worked while imprisoned for the robbery convictions and also when he was on parole. (Doc. 119 at 8.) Deputy Sheriff Raymond Roberts testified that petitioner served as a trustee during his incarceration pending trial and had performed diligently. (Doc. 119 at 9.) James Esten, formerly an administrative employee for the California Department of Corrections, testified that during petitioner's incarceration for robbery, his behavior was good and he was a valuable worker. (Id.) Esten predicted that petitioner would make an excellent prisoner, could assist correctional officers in pacifying other inmates, and again would be a valuable worker. (Id.)

////

Evidence of past and future positive adjustment in jail and prison is admissible as evidence in mitigation at the capital sentencing hearing. Skipper v. South Carolina, 476 U.S. 1 (1986). Mitigation evidence is not required to "relate specifically" to the charged offense, or otherwise tend to "justify" or "excuse" the defendant's crime. See Tennard v. Dretke, 542 U.S. 274, 287 (2004) ("the 'meaning of relevance is no different in the context of mitigating evidence introduced in a capital sentencing proceeding' than in any other context. . . .'"); McKoy v. North Carolina, 494 U.S. 433 (1990) (state law may not require a "nexus" between mitigation evidence and the murder).

Petitioner has shown good cause to obtain petitioner's complete prison and jail records as relevant to petitioner's claim that trial counsel were ineffective for failing to investigate the background and circumstances of petitioner and the mitigating aspects of his adjustment to prison, failing to investigate, develop and present mitigating evidence regarding petitioner's mental state at the time of the 1983 and 1993 offenses and convictions, and failing to prepare and present the testimony of the institutional adjustment expert at the penalty phase, all related to Claims 3(b), (c), (g) part F, (r), (u), and (v).

Petitioner's request for records from unspecified "other law enforcement authorities" is denied.

### Parole and Probation Files

Petitioner states he "was on probation after his release from the prior convictions of 1983 and 1993" and that while "some reports have been seen by counsel for petitioner, petitioner has no way of telling whether his full file is contained in the records he has obtained to date." (Doc. 136 at 41.) He contends the information "will be highly relevant as to petitioner's claims, especially for the ineffective assistance of counsel claims." (Doc. 136 at 41.) He further contends relevant information "could be in the probation and parole reports" supporting his claim "that trial counsel failed to rebut the prosecution's argument that petitioner was not insane at the time of the 1983 and 1992 offenses." (Doc. 136 at 41.)

////

////

During the closed hearing on his Marsden motion, petitioner stated that his parole officer, Mr. Thanks, said petitioner was "his favorite parolee" and Mr. Thanks should have been called to testify during the penalty phase. (Doc. 136 at 28, 41.)

Petitioner has shown good cause to obtain petitioner's complete probation and parole records as relevant to petitioner's ineffective assistance of counsel claims included in Claim 3, specifically as it relates to trial counsel's failure to investigate, interview or call Mr. Thanks as a witness during the penalty phase, and trial counsel's failure to rebut the prosecutor's argument that petitioner was not insane at the time of the 1983 and 1993 offenses.

### Discovery under *Harris* and Rule 6

Petitioner claims his investigation "has revealed that numerous witnesses and potential witnesses in and around Sacramento were interviewed by local law enforcement agencies" and that because he "has raised substantial claims of state misconduct, including well-documented claims that the State made knowing use of false and misleading testimony, and failed to disclose material exculpatory evidence," and because he has "had no access to any discovery thus far in the litigation," discovery should be permitted pursuant to Rule 6. (Doc. 136 at 42.)

Petitioner is not entitled to discovery on every claim in his petition, despite his assertions otherwise. Bracy, 520 U.S. at 904. Rather, following review of his claims pursuant to section 2254(d), petitioner is entitled to discovery concerning claims 3 and 34 and no more, as noted elsewhere herein. Significantly then, as to those claims previously denied and dismissed, and any discovery sought relating in any way to those claims previously denied and dismissed, petitioner cannot demonstrate "reason to believe that [he] may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief." Harris v. Nelson, 394 U.S. at 300. Given the present disposition of the claims in the petition and the procedural posture of this case, only discovery requests supported by good cause and specific to claims 3 and 34 should be granted. Id. at 298 (discovery appropriate "which will allow development . . . of the facts relevant to disposition of the habeas corpus petition").

////

////

Again, petitioner's assertions that he has raised "substantial" claims of state misconduct or a failure to disclose exculpatory evidence have been adjudicated or were not presented. Discovery as to such claims is not warranted and is therefore denied.

Discovery in the Interest of Judicial Economy

Finally, petitioner "urges this Court to order discovery and thereby remove any external impediments preventing counsel from fully developing the claims presented in his writ application" in the interests of judicial economy. (Doc. 136 at 42-43.)

Except for claims 3 and 34, and claim 19 that was dismissed without prejudice to future consideration following the setting of an execution date, petitioner is not entitled to further development of any of "the claims presented in his writ application." Judicial economy would in fact be thwarted by expending scarce resources on claims that have previously been denied and dismissed following the district court's de novo review.

CONCLUSION AND ORDER

In March 2019, the district court adopted in full the Findings and Recommendations of February 2018. Relevant here, claim 3 was the only claim presented in the amended petition to survive § 2254(d) review. Claim 34 was deferred for later consideration of procedural bars. Claim 3 concerns allegations of ineffective assistance of counsel during the penalty phase whereas claim 34 concerns allegations of ineffective assistance of state habeas counsel. As should be clear, discovery is not warranted beyond those precise matters.

Because petitioner's prison and jail records and parole and probation files may be relevant to either claim 3 or claim 34, discovery of those materials is warranted and good cause has been shown. Petitioner shall prepare suitable subpoenas for such records. As to all remaining discovery requests in petitioner's current motion, discovery is not appropriate or warranted.

For the reasons outlined herein, IT IS HEREBY ORDERED that petitioner's motion for discovery (Doc. No. 136) is granted in part and denied in part, as follows:

1. Petitioner's motion for discovery of prosecution and law enforcement files is DENIED;

2. Petitioner's motion for discovery of prison records from the California Department of Corrections and Rehabilitation, and jail records from the Sacramento County Sheriff's

Department, is GRANTED; petitioner's request for records from unspecified "other law enforcement authorities" is DENIED;

    3. Petitioner's motion for discovery of parole and probation files is GRANTED;

    4. Petitioner's motion for discovery "under *Harris* and Rule 6" is DENIED; and

    5. Petitioner's motion for discovery in the interest of judicial economy is DENIED.

Dated: March 1, 2022

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/sp/cw/Cornwell.dsc.136